# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

DONALD EUGENE BELEW, parent of
Joseph Daniel Belew, a minor decedent,

    Plaintiff,

vs.                                  CASE NO. CV-06-J-865-NW

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 27), brief in support of said motion (doc. 28) and evidentiary submissions (doc. 29), the plaintiff's response to said motion (doc. 30) and evidentiary submissions (doc. 31), and the defendant's reply (doc. 32).

Plaintiff commenced this action on May 8, 2006, by filing a complaint under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Complaint at ¶ 1. The facts of this case arise out of an automobile accident in which the decedent, a passenger in non-party Eric Tate's vehicle, was severely injured and later died from those injuries. The plaintiff sues the United States on the theory that Park Ranger Justin Montgomery, who chased the Tate vehicle, was negligent or wanton in his pursuit of said vehicle.

The parties do not dispute that this court has jurisdiction under the Federal Tort Claims Act, that Park Ranger Montgomery was acting within the line and scope of his employment with the National Park Service at the time of the accident, or that the substantive law of Alabama applies to the plaintiff's claims, except that the Federal Tort Claims Act does not provide for punitive damages.

The plaintiff filed a claim with the Department of the Interior, which was denied February 7, 2006. Defendant Exhibit A, at 00066. The defendant denies liability for the injuries and subsequent death of decedent, arguing that the actions of Park Ranger Montgomery where not the proximate cause of decedent's injuries.

## FACTUAL BACKGROUND

On evening of the date of the accident, July 11, 2003, Ranger Montgomery was patrolling Natchez Trace Parkway, a road owned and maintained by the defendant through the Department of Interior, National Park Service, when he saw the vehicle driven by Eric Tate fail to stop at a stop sign on Natchez Trace Parkway. Deposition of Montgomery, at 13, 18-19. Montgomery estimated Tate to have been traveling at about 25 miles per hour at the time he ran the stop sign.[1]  Montgomery depo. at 14.

---

[1] While plaintiff refers to this as a "rolling stop" in his response to the defendant's motion, the testimony of Ranger Montgomery does not support this description as a "rolling stop" is generally not at 25 mph. Calvin Farmer, a supervisory park ranger and Montgomery's superior, recollected from his conversation with Montgomery was that Montgomery had "observed a car rolling through a stop sign." Farmer depo. at 7, 25.

Montgomery turned on his patrol car's emergency lights and followed Tate's car for approximately .7 or .8 miles, until Tate came to a stop. Montgomery depo. at 19-20. When Montgomery went to exit his vehicle, Tate drove off, down County Road 5. Montgomery depo. at 20-22; Yerbey depo. at 18-19. Yerbey, a fellow passenger in the car, begged Tate to stop and let him out of the car. Yerbey depo. at 9-11, 15-20. During this time decedent fastened his seatbelt. Yerbey depo. at 19-20. Because of Tate's behavior, Montgomery pursued the Tate vehicle, at speeds which approached 90 miles per hour. Montgomery depo. at 18. Montgomery never came close enough to the Tate vehicle to read the license plate number. Montgomery depo. at 22-23.

The pursuit lasted 1.7 miles, and approximately one minute, at which point Montgomery saw the Tate vehicle enter a curve, lose control, and strike a tree. Montgomery depo. at 23-24; Farmer depo. at 38-39. According to Yerbey, Tate was on the wrong side of the road, a car was coming that way, so they veered off the road to dodge the car. Yerbey depo. at 20; see also Montgomery depo. at 24. Yerbey does not remember anything else. Yerbey depo. at 20. Montgomery was approximately 100 to 200 yards behind the Tate vehicle at the time of the collision. Montgomery depo. at 24. He called his dispatcher, reported the fact of the wreck, and requested that the dispatcher notify the highway patrol and county sheriff's office. Montgomery depo. at 29. Montgomery followed appropriate procedures for engaging in a pursuit.

Farmer depo. at 41-42. Given the circumstances, his actions were appropriate. Huseman depo. at 35.[2]

Tate has since been charged with Murder, 1st Degree Assault and DUI in relation to the death of decedent. *See* CC 07-128, Circuit Court of Lauderdale County, Alabama. He pleaded guilty to DUI and to the lesser included charged of Homocide by a vehicle and Assault, 3rd degree, on March 23, 2007. Defendant Exhibit M. Tate stated that he had consumed alcohol and marijuana prior to the accident. Farmer depo. at 24. In Peterson's opinion, Tate was the cause of the accident.[3] Peterson depo. at 36-37. According to plaintiff's expert, Mark A. Farrell, the Department of Interior was deliberately indifferent in supervising its personnel, providing training, and providing alternative training to high speed chases, and Ranger Montgomery was not in compliance with policies and procedures, did not demonstrate reasonable discretion, and acted with deliberate indifference. Farrell depo. at 36-42, 51.

---

[2] Martha C. Huseman is the Assistant Chief Ranger for the Park Service for Natchez Trace Parkway. Huseman depo. at 7.

[3] Pete Peterson is a senior instructor at the Federal Law Enforcement Training Center. Peterson depo. at 3.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.

5

R. Civ. Pro 56(e).  In meeting this burden the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  The nonmovant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

"The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).  Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## LEGAL ANALYSIS

To proceed against the United States under the FTCA, the plaintiff must demonstrate that the personal injury and death of decedent was caused by the

negligent or wrongful act or omission of a Government employee. See 28 U.S.C. § 1346(b). The parties dispute whether decedent's injuries and death were caused by the actions of Ranger Montgomery or caused by the actions of Eric Tate.

Under the FTCA, the court must apply the substantive law of the state in which it sits. Under Alabama law, to establish negligence, a plaintiff must demonstrate (1) a duty; (2) a breach of that duty; (3) proximate causation; and (4) actual damage or injury. *See e.g., Martin v. Arnold*, 643 So.2d 564, 567 (Ala.1994). While defendant agrees that Montgomery had a duty to Tate, and therefore to decedent, the defendant asserts Montgomery's actions did not breach that duty. The court need not decide whether Montgomery breached any duty owed to decedent. Assuming such a breach occurred, the plaintiff cannot show that Montgomery's actions were the cause of decedent's injuries and subsequent death.

Proximate cause is an essential element of a negligence claim. *See Wassman v. Mobile County Communications Dist.,* 665 So.2d 941 (Ala.1995). Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. *Thetford v. City of Clanton,* 605 So.2d 835, 840 (Ala.1992). An injury may proximately result from concurring causes; however, it is still necessary that the

plaintiff prove that the defendant's negligence caused the injury. *Martin,* 643 So.2d at 567.

Although proximate cause is generally a question to be determined by the trier of the fact, it may be decided by the court in considering summary judgment if " there is a total lack of evidence from which the fact-finder may reasonably infer a direct causal relation between the culpable conduct and the resulting injury. " *Green v. Alabama Power Co.,* 597 So.2d 1325, 1328 (Ala.1992) (quoting *Davison v. Mobile Infirmary,* 456 So.2d 14, 24 (Ala.1984)).

Numerous Alabama cases have found that the conduct of the driver in fleeing from an officer is the proximate cause of any subsequent injuries.  See e.g., *Gooden v. City of Talladega,* — So.2d —, 2007 WL 625837 (Ala.2007); *Blair v. Rainbow City,* 542 So.2d 275 (Ala.1989).  *Doran v. Madison,* 519 So.2d 1308 (Ala.1988); *Madison v. Weldon,* 446 So.2d 21, 28 (Ala.1984);

In *Madison v. Weldon*, the Alabama Supreme Court held the law to be such that:

> The rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender.  Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape.

*Madison*, 446 So.2d at 28.

The Alabama Supreme Court considered whether officers were liable for injuries inflicted on a third party by the fleeing offender in both *Doran* and *Madison,* and in both cases concluded it was the actions of the fleeing offender in fleeing, and not the pursuing officer in chasing, which caused the injuries to the third party. See *Blair v. City of Rainbow City,* 542 So.2d 275, 276 (Ala.1989). In *Blair*, the Court noted that the offender "could have slowed down and stopped at any time during the chase; the choice to speed and drive recklessly to evade capture was [the offender's] alone. The plaintiff would have us require police officers to allow a fleeing offender to escape if the offender exceeds the speed limit; *Doran* and *Madison* have clearly rejected this contention." *Blair*, 542 So.2d at 276.

Although the plaintiff asserts that this case should be governed by *Seals v. City of Columbia*, 641 So.2d 1247 (Ala.1994), rather than the above line of cases, the court disagrees. The pivotal difference is that the Court in *Seals* stated that "proper procedure was to back off once a roadblock was in place. Seals's expert testified that Cook acted negligently and that *no pursuit was necessary because a road block was in place*." *Id.*, at 1250 (emphasis in original). Here, there was no road block.

The plaintiff also argues that the decedent was not an active participant in the events leading to his death. The court absolutely agrees. Taking all the evidence in the light most favorable to the plaintiff, and even assuming, for the sake of this

9

opinion, that Ranger Montgomery failed to use due care in the operation of his vehicle, the fact remains that, under Alabama law, the decedent's death was proximately caused by Eric Tate's flight from Ranger Montgomery, and not by Montgomery's chase.[4]

The plaintiff has failed to provide the court any evidence that Ranger Montgomery proximately caused the life ending injuries to decedent. As such, the plaintiff has failed to show an essential element of his case on which he has the burden of proof. *See Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

## CONCLUSION

The defendant's motion for summary judgment on all counts of the complaint be and hereby is **GRANTED**. All claims against the defendant United States are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 24th day of April, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[4] Were the law different, anyone could avoid receiving a ticket for a minor traffic offense such as running a stop sign by simply driving off at a high rate of speed any time a law officer attempted to make a valid traffic stop.